[File No. Cr. 193]

STATE OF NORTH DAKOTA, Respondent, v. C. J. MYERS, Appellant.

(19 NW(2d) 17)

688

Opinion filed May 24, 1945.   Rehearing denied June 23, 1945

J. K. Murray, for appellant.

Alvin Strutz, Attorney General and George S. Register, States Attorney, for respondent.

BURKE, J.   Defendant was convicted in the District Court of Burleigh County of the crime of operating a motor vehicle upon the public highways of the State while under the influence of intoxicating liquor. He has appealed from an order denying a new trial and from the judgment of conviction.   There are two issues raised by the specifications of errors.   Does the record upon appeal sufficiently show a consent to oral instructions and is the evidence sufficient to sustain the verdict?

The only references to a consent to oral instructions or a waiver of written instructions are contained in the official court stenographer's transcript of the proceedings upon the trial.   They are as follows:

"The Court:   We will take a recess until 9:15 tomorrow morning.

"(Written instructions waived by Mr. Murray (the attorney for the defendant).   Asked him if he wanted me to work again tonight and he said that would not be necessary.   Also waived by Mr. Register)."

There also appears in the record of the succeeding days' proceedings the following:   "At the close of the testimony and arguments, counsel

for the respective parties having expressly waived written instructions, apart from the presence of the jury, the following oral instructions were delivered by the Court to the jury."

After the hearing held upon notice in accordance with the provisions of ND Rev Codes, § 29–2301 (Chapter 126, ND Laws 1925), the transcript was settled as a part of the statement of the case and was certified by the trial judge as a correct transcript of the evidence and of all proceedings had and made a matter of record by the official stenographer.

The statement of the case when so settled, certified and filed with the clerk became a part of the record upon appeal. ND Rev Codes, § 29–2304.

Defendant challenges the sufficiency of this record upon the grounds, first, that it does not contain an entry of defendant's actual consent but merely the conclusion of the reporter and second, that under the provisions of ND Rev Codes, § 29–2130, an entry of consent to oral instructions is ineffectual unless the entry is contained in the minutes of the trial.

It is true that the record does not quote any statement made by the defendant or his counsel which would constitute a waiver of written instructions and that the only reference to an express waiver appears parenthetically in the introduction to the instructions. The statement that is made, however, to wit: "Counsel for the respective parties having expressly waived written instructions, etc." can only be construed as a statement that written instructions were expressly waived.

As this statement comes to us it is more than a transcript of the stenographer's notes. It is a part of the statement of the case settled and certified as correct by the trial court. Under the statutory procedure for the settlement of a statement of the case, the correctness of the stenographer's transcript may be questioned and if so questioned, the trial judge is required to "make such corrections, if any, as shall be necessary to make the transcript correct." ND Rev Codes, §§ 29–2301 and 28–1806. It is inconceivable that the trial court would certify as correct a conclusion of the official reporter unless statements made by defendant's counsel at the trial justified such conclusion. This is particularly true where, as in this case, the statement in the official stenog-

rapher's transcript was questioned at the hearing to settle the statement of the case. The statement of the case properly certified is a "solemn judicial record" which imports absolute verity. Garbush v. Firey, 33 ND 154, 156 NW 537. The record is thus clear that defendant did waive written instructions.

He contends, however, that under the provisions of ND Rev Codes, § 29–2130, this waiver is ineffective unless it is entered in the minutes of the trial. The statute in question provides: "In its instructons to the jurors, the court shall instruct only as to the law of the case, and all instructions first must be reduced to writing, unless by consent of both parties entered in the minutes, the instructions are given orally and taken down by the stenographer of the court in shorthand."

While the precise question raised here has never been decided by this court, we have assumed in at least two cases that an entry of consent to oral instructions in the statement of the case was sufficient. In State v. Mitchell, 49 ND 726, 193 NW 310, we considered the question of a consent to oral instructions solely upon the basis of what appeared in the statement of the case and the clear import of the decision is that an entry of consent to oral instructions in the statement of the case would have been sufficient. We adopted the same theory in State v. Hanson, 53 ND 879, 207 NW 1000. In the latter case the trial judge before giving additional instructions which had been requested by the jury, stated "I don't suppose there is any objection to it not being in writing? The court can put it in writing." At the time this statement was made neither the defendant nor his counsel, who were both present, made any objections. The court thereupon proceeded to give oral instructions. Upon the appeal it was contended that the giving of oral instructions without the consent of the defendant being entered in the minutes was a sufficient ground for reversal. We disposed of the question by saying "In the circumstances, we think there was a waiver by the defendant of the right to written instructions and that error cannot be predicated thereon."

However, conceding for the purposes of this case that it was error not to enter defendant's consent to oral instructions in the clerk's minutes of the trial, the record otherwise shows that the defendant did give his consent. In these circumstances the error, if any, was not

prejudicial to any of the defendant's substantial rights and is therefore not a ground for reversal. State v. Hasledahl, 3 ND 36, 53 NW 430; State v. Carter, 50 ND 270, 195 NW 567; State v. Gates, 52 ND 659, 204 NW 350; State v. Bowe, 57 ND 89, 220 NW 843.

There remains the question of the sufficiency of the evidence to sustain the verdict. Early on the morning of December 11, 1942, the defendant and two companions were driving from Jamestown to Bismarck. At a point approximately three miles west of Driscoll in Burleigh County the car which defendant was driving left the highway, rolled over two or three times and came to rest in the ditch between the highway and the adjoining field. There is no question but that the car was severely damaged. The defendant and the other occupant of the front seat extricated themselves and then helped the occupant of the back seat, who had been asleep, to get out. When all were free of the wreck the defendant volunteered to go for help and set off in a westerly direction down the highway. About fifteen or twenty minutes later a westbound passenger bus operated by Northland Greyhound Lines stopped and picked up defendant's passengers. About two miles farther west upon the highway it picked up the defendant.

According to the testimony of the driver of the bus, the defendant "had difficulty with the first step," leading into the bus. His breath "smelled of liquor" and when asked whether he was the driver of the wrecked car, he loudly and profanely refused to answer the question. He held on to a rail and leaned against the driver's right arm. Another driver for the Northland Greyhound Lines was riding on the bus. He testified that he went forward in the bus and directed the defendant to a seat. When he reached the seat, defendant "sat down rather heavily." The witness sat beside him. He stated there was "a strong odor of liquor" on defendant's breath.

As the bus proceeded toward Bismarck, the defendant, according to the testimony of this witness continued to behave in a truculent manner, talking in a loud voice and constantly using profanity. According to the witness, defendant was advised to moderate his language by a military policeman who was a passenger on the bus, by the witness and by one of his own companions.

The bus arrived at Bismarck about five o'clock A. M. At the bus depot the driver of the bus testified that he asked for the defendant's

name but that the defendant refused to give it until a member of the Bismarck Police Force intervened, stating, "if you hadn't been drinking you would give your name." There is also testimony that at the bus depot the defendant had a strong odor of alcoholic liquor on his breath, that his gait was somewhat unsteady, his eyes were red and that he continued to act in a belligerent manner.

According to defendant's testimony, he and one of his companions arrived in Jamestown from Fargo at sometime between ten and ten-thirty the night before the accident; they first went to a restaurant where they had a lunch. They then went over to the Gladstone Hotel where they met a Mr. Breitbach, the hotel manager, and a Mr. Bristol. With Mr. Bristol they went into the Blue Blazer Bar where they remained for about an hour, during which time they each drank one bottle of coco-cola and nothing else. They then went to the Jamestown Elks Club, arriving there about midnight. Following what was said to be a custom, the bartender at the Elk's Club offered the visiting brothers a drink. The defendant drank a whiskey high ball and his companion a bottle of beer. Defendant stated that this whiskey high ball was the only drink of intoxicating liquor he had on the 10th or 11th of December up to and including the time of the accident.

At the Elk's Club the defendant met the gentleman who was to be his second companion on the trip to Bismarck. The record does not disclose the time of their departure. According to defendant when he had reached a point about three miles west of Driscoll, he noticed a vehicle approaching from the west. It had glaring headlights and a spotlight. Just as he was about to pass this vehicle, he noticed that it was a truck with a body which projected well over the center of the road. To avoid a collision he turned sharply to the right driving well out upon the shoulder of the highway which was covered with soft snow and crumbly ice. Upon turning the car back into the highway proper, he struck a patch of ice. He applied the brakes. As he slid off of the ice onto the bare highway the wheels caught in some way and he was unable to maintain control of the car which ran off the road, rolled over and came to rest in the ditch. As to his behavior thereafter both in the bus and in the bus depot he flatly contradicts the witnesses for the State. In all of his testimony he is corroborated by one of his companions. There is evidence in the record, however, which if true com-

pletely impeaches this witness. For instance, the bus driver testified that when this witness first entered the bus he stated, "The driver is up front he got some bad news, he has been trying to drown his sorrows with liquor and has been drinking too much."

In support of his contention that the evidence is insufficient to sustain a conviction defendant relies chiefly upon the testimony of Dr. Orr. Dr. Orr testified that in his opinion it was improbable for the defendant to be in a car that was wrecked to the extent that defendant's car was wrecked without suffering some degree of brain concussion and that concussion would account for defendant's behavior. He also stated that the only sure way to have determined whether defendant was under the influence of intoxicating liquor would have been to test the alcoholic content of his blood. With respect to this testimony it is sufficient to say that the law does not require such proof. Testimony as to behavior and breath odor such as the state's witnesses attributed to the defendant in this case is considered sufficient, evidence of intoxication. State v. Winberg, 196 Minn 135, 264 NW 578; Smith v. State, 124 Neb 587, 247 NW 421; Degutes v. State, 189 Wis 435, 207 NW 948; State v. Graham, 176 Minn 164, 222 NW 909.

Since the evidence was sufficient for the submission of the case to the jury it was for the jury to evaluate the conflicting testimony and determine where the truth lay. State v. Denny, 17 ND 519, 117 NW 869; State v. Keyes, 58 ND 700, 227 NW 224; State v. Bossart, 61 ND 708, 240 NW 606.

The judgment of the District Court is accordingly affirmed.

MORRIS, BURR and NUESSLE, JJ., concur.

CHRISTIANSON, Ch. J. (dissenting), I dissent. In my opinion the record on this appeal shows that in this case oral instructions were given to the jury in violation of the following statutory provision:—"In charging the jury, the court shall instruct only as to the law of the case, and *all instructions must first be reduced to writing, unless by consent of both parties entered in the minutes,* the instructions are given orally and taken down by the stenographer of the court, in shorthand." Comp Laws 1913, § 10,822.

The language of the statute is plain and emphatic. It says that "all instructions *must* be reduced to writing" before they are read to the jury, "unless by *consent of both parties entered in the minutes,*" the giving of oral instructions is consented to. The Legislature required not only that consent to oral instructions must be given; it required with equal emphasis that the consent must be "entered in the minutes."

The language of the statute is peremptory. This court has said that the statute is clearly mandatory; that a "defendant on trial has a right to assume that the statute will be complied with and his silence cannot be construed as consent." State v. Mitchell, 49 ND 726, 193 NW 310. The statute relates to matters affecting public interests and the rights of defendants in criminal actions, and imposes upon the trial court "a positive and absolute duty" (State v. Barry, 14 ND 316, 329, 330, 103 NW 637) "in charging the jury" in a criminal action to reduce all instructions to writing before they are read to the jury "unless by consent of both parties entered in the minutes" it is agreed that oral instructions may be given. According to the plain words of the statute mere consent of the parties that oral instructions may be given does not relieve the court from the duty of giving written instructions. The consent must be made a matter of record—it must be *"entered in the minutes."* The duty which the statute imposes upon the trial court in charging the jury in a criminal action to reduce all instructions to writing before they are read to the jury continues in full force unless and until (1) both parties consent that oral instructions may be given, and (2) such consent is entered in the minutes, and thus made a matter of record in the permanent record which the clerk of the district court is required to keep. Consent and entry of consent in the minutes are both conditions precedent—conditions which must exist before the court is relieved of the duty of reducing the instructions to writing, and authorized to give oral instructions.

The legislative mandate that consent to oral instructions must be "entered in the minutes" includes "in itself a negative" that the consent shall not be entered otherwise; and entry by some person other, and in a record other, than the Legislature has prescribed is nugatory, and does not constitute an entry at all. Train v. Sisti, 146 Misc 362, 262 NYS 167, 175, 176.

"When the law is in the affirmative that a thing should be done by certain persons or in a certain manner, this affirmative matter contains a negative that it shall not be done by other persons or in another manner." 26 Am & Eng Enc Law, p. 605; State v. Tucson Gas, E. L. & P. Co. 15 Ariz 294, 138 P 781; Scott v. Ford, 52 Or 288, 296, 97 P 99; Train v. Sisti, 146 Misc 362, 262 NYS 167, 175, 176; Taylor v. Michigan Pub Utilities Commission, 217 Mich 400, 186 NW 485; Re Atty. Gen. 2 NM 49, 57; State ex rel. Barlow v. Holtcamp, 322 Mo 258, 14 SW2d 646; Keane v. Strodtman, 323 Mo 161, 18 SW2d 896; Chilton v. Drainage Dist. 228 Mo App 4, 63 SW2d 421; Sutherland, Statutory Construction, § 326; 19 Cyc 23–27; 35 CJS 281.

The right of a defendant in a criminal action in a district court to have instructions to the jury reduced to writing before they are given to the jury has been recognized, and sought to be safeguarded by the laws in this jurisdiction from the earliest times. Dak, Rev Codes, 1877, Code Crim Proc § 343, Code Civ Proc § 248.

The particular provisions relating to instructions involved in this case originated in chapter 84, Laws 1893. By that chapter the Legislature provided:—"The court in charging a jury, shall only instruct as to the law of the case; and no court shall instruct a jury in any case, civil or criminal, unless such instructions are first reduced to writing. . . . *Provided,* that *with the consent of both parties entered in the minutes,* the court may instruct the jury orally, in which case such oral instructions shall be taken down by the official stenographer, and written out at length, and the *shorthand notes* thereof, together with such instructions so written, shall be filed in the case with the clerk."

It will be noted that the 1893 statute covered both civil and criminal actions, and the commission which prepared the Revised Codes of 1895 separated the two types of actions and embodied in the Code of Civil Procedure the provisions relating to civil actions (Rev Codes 1895, §§ 5432, 5433; Comp Laws 1913, §§ 7620, 7621; ND Rev Code 1943, § 28–1411) and embodied in the Code of Criminal Procedure the provisions relating to criminal actions (Rev Codes 1895, § 8176; Comp Laws 1913, § 10,822; ND Rev Code 1943, § 29–2130).

As embodied in the Code of Criminal Procedure in the Revised Codes of 1895, the provisions relating to instructions to a jury in a

criminal action read as follows:—"In charging the jury, the court shall only instruct as to the law of the case, and all instructions must first be reduced to writing, unless by consent of both parties entered in the minutes, the instructions are given orally and taken down by the stenographer of the court in shorthand." Rev Codes 1895, § 8176. "If the charge of the court, or any part thereof, is given orally, the same must be taken down by the official stenographer, and shall be deemed excepted to by the defendant, and the same as soon as may be after the trial must be written out at length and filed with the clerk of the court by the stenographer thereof; provided, that in case the defendant is acquitted by the jury the oral instructions need not be transcribed or filed with the clerk." Rev Codes 1895, § 8178. These provisions were retained without change in subsequent revisions and compilations, and were in force at the time of the trial of this action. Comp Laws 1913, §§ 10,822, 10,824.

When the Legislative Assembly in 1893, and again in 1895, provided that the consent of both parties must be "entered in the minutes," it did not employ novel or strange terms. On the contrary, it employed words that had been utilized in the Code of Criminal Procedure and also in the Code of Civil Procedure throughout the entire history of the state and the history of the Territory of Dakota. It employed words that had well settled meanings, not only in this jurisdiction, but throughout the country. The word "enter" as employed in the statute under consideration was then, and is now, defined by lexicographers to mean:— "To cause to be inscribed or enrolled; to inscribe, enroll, or record; as, to enter a name, a date, or an item in a book or list." See, the Century Dictionary and Cyclopedia; Webster's New International Dictionary; Funk and Wagnall's New Standard Dictionary.

The terms "minutes," and "minutes of the court" were not novel or original. They had long been used in the various jurisdictions of this country and had certain well defined meanings recognized by courts and legal writers. Anderson's Dictionary of Law defines minutes:— Official memoranda of what takes place in the court; made by the clerk and preserved in his "minute-book." See Bouvier's Law Dictionary; Black's Law Dictionary; 27 Words & Phrases, Perm ed, pp. 282,

283. See also Funk & Wagnall's New Standard Dictionary; State v. Marty, 52 ND 478, 483, 203 NW 679, 681.

The same authorities define "minute book," as "A book kept by the clerk or prothonotary of a court, in which minutes of its proceedings are entered." See Cyc Law Dictionary; Black's Law Dictionary.

In this state the office of clerk of court is imbedded in the Constitution, which provides that a clerk of court shall be elected in each organized county in the state at each general election. ND Const, § 173. The Legislative Assembly prescribed that the clerk of the district court, among others, shall perform the following duties:—

"1. Take charge of and safely keep and dispose of according to law all books, papers and records which may be filed or deposited in his office.

2. Act as clerk of the district court and attend each session thereof and upon the judge at chambers when required."

"5. Keep a minute book, which must contain the daily proceedings of the court, which must be signed by the clerk, which book must be indexed in the names of both plaintiff and defendant." Comp Laws 1913, § 3387, subd 1, 2, 5; Rev Codes 1895, § 1989, subd 1, 2, 5.

At the times Laws 1893, c 84 and Revised Codes, 1895 were enacted, the laws of this state specifically required that certain orders or rulings of the court, and proceedings had in the court, in criminal actions, be "entered in the minutes," or "entered upon the minutes."

It was provided that where it appears upon the arraignment of a defendant that "the name by which he is informed against or indicted is not his true name," Rev Codes 1895, § 8077; Dak Rev Codes 1877, Code Crim Proc § 251; Comp Laws 1913, § 10,723; and that another is his true name, the court must direct an entry thereof in *the minutes* of the arraignment. Rev Codes 1895, § 8079; Dak Rev Codes 1877, Code Crim Proc § 253; Comp Laws 1913, § 10,725.

It was provided that upon the dismissal of a criminal action by the court, either upon its own motion or upon the application of the state's attorney "the reasons of the dismissal must be set forth in the order, which must be *entered in the minutes.*" Rev Codes 1895, § 8500; Dak Rev Codes 1877, § 599; Comp Laws 1913, § 11,169.

That where the court orders a stay of prosecution and discharge of

the defendant, upon the compromise of a misdemeanor," the reasons for the order must be set forth therein and *entered on the minutes.*" Rev Codes 1895, § 8410; Dak Rev Codes 1877, § 525; Comp Laws 1913, § 11,075.

It was made "the duty of the clerk of the district court in which any criminal action or proceeding is pending or tried, to enter carefully and correctly in the *minutes* of such court each ruling or decision of the court, made in open court" upon a motion to set aside an information or indictment, a motion in arrest of judgment, a motion for a new trial, or in making or refusing to make an order after judgment affecting any substantial right. Rev Code 1895, § 8261; Comp Laws 1913, § 10,907.

It was provided that "upon considering the demurrer (to an information or indictment) the court must give judgment either sustaining or overruling it, and an order to that effect must be *entered upon the minutes.*" Rev Codes 1895, § 8094; Dak Rev Codes 1877, Code Crim Proc § 268; Comp Laws 1913, § 10,740.

That a plea to an information or indictment "must be oral, and must be *entered upon the minutes* of the court." Rev Codes 1895, § 8101; Dak Rev Codes, 1877, Code Crim Proc § 275; Comp Laws 1913, § 10,817.

That an order for the change of place of trial of a criminal action "must be *entered upon the minutes.*" Rev Codes 1895, § 8113; Dak Rev Codes 1877, § 286; Comp Laws 1913, § 10,759; State v. Marty, 52 ND 478, 203 NW 679.

That a trial by a jury "in criminal cases not amounting to felony," may be waived "by consent of both parties expressed in open court and *entered on the minutes.*" Rev Codes 1895, § 8124; Dak Rev Codes 1877, Code Crim Proc, § 293; Comp Laws 1913, § 10,770.

That on the trial of a challenge to the panel or to an individual juror, "the court must either allow or disallow the challenge, and then direct an *entry* accordingly *upon the minutes.*" Rev Codes 1895, § 8171; Dak Rev Codes 1877, Code Crim Proc § 339; Comp Laws 1913, § 10,817.

That, except in case of such illness on the part of a juror as prevents him from "the continuance of his duty," or the occurrence of any accident or cause preventing the jury from being kept together for their deliberation, "the jury cannot be discharged after the cause is sub-

mitted to them until they have agreed on their verdict, and rendered it in open court, unless by the consent of both parties *entered upon the minutes,* or unless at the expiration of such time as the court deems proper, it satisfactorily appears that there is no probability that the jury can agree." Rev Codes 1895, § 8227; Dak Rev Codes 1877, Code Crim Proc § 386; Comp Laws 1913, § 10,873.

That, "When the verdict is given, and is such as the court may receive, the clerk must immediately record it in full *upon the minutes* . . . ." Rev Codes 1895, § 8252; Dak Rev Codes, 1877, Code Crim Proc § 408; Comp Laws 1913, § 10,898.

It was also provided that, "When judgment upon a conviction is rendered, the clerk must *enter the same upon the minutes,* stating briefly the offense for which the conviction has been had, and must, as soon as may be, annex together and file the following papers which constitute a record of the action:—

"1. The information or indictment and all the papers filed in the action together with a copy of *the minutes of the plea or demurrer.*

.2. A copy of *the minutes of the trial.*

3. The written charges given or refused, with indorsements if any thereon; the written instructions given by the court and the copy of any oral instructions by the court and filed with the clerk.

4. A copy of the judgment."

Rev Code 1895, § 8279; Dak Rev Code 1877, Code Crim Proc § 446; Comp Laws 1913, § 10,942.

There can be no doubt but that the several statutory provisions set forth above requiring that entry of certain acts, statements, rulings, or orders be made upon "the minutes," had reference to the minutes required to be kept by the clerk of the court.

It will be noted that the lawmakers took great care to prescribe that certain actions or rulings, affecting the rights of a defendant in a criminal action, must be recorded by the constitutional officer, the clerk of court—in the minutes which he is required to keep as part of his official duties. Especial care was taken to safeguard the rights of the defendant in a criminal action in relation to instructions to the jury; and specific directions were embodied in the statute as to the record that must be made with respect thereto.

As has been noted, it was specifically provided that in order to effect a waiver of a jury in a criminal case there must be a "consent of both parties expressed in open court and entered on the minutes." Comp Laws 1913, § 10,770. That there must be written instructions in all criminal cases "unless by consent of both parties entered in the minutes, the instructions are given orally." Comp Laws 1913, § 10,822.

In case of consent to oral instructions, the instructions "must be taken down by the official stenographer and shall be deemed excepted to by the defendant, and the same as soon as may be after the trial must be written out at length and filed with the clerk of the court by the stenographer thereof; provided that in case the defendant is acquitted by the jury the oral instructions need not be transcribed or filed with the clerk." Comp Laws 1913, § 10,824.

It was further provided that "upon the close of the trial all instructions given or refused, together with those prepared by the court, if any, must be filed with the clerk. Comp Laws 1913, § 10,824.

It was provided:—"The instructions requested by the defendant and refused, or by the prosecutor and given, and all instructions given to the jury, by the court in writing, or orally and written out by the stenographer of the court and filed with the clerk, . . . are deemed excepted to, and need not be embodied in the statement of the case but the same and each of them with the indorsements, if any, showing the action of the court thereon, form a part of the record of the action. . . . Any error committed by the court in or by any decision, ruling, instruction or other act and appearing in the record of the action may be taken advantage of upon a motion for a new trial or in the supreme court on an appeal." Rev Codes 1895, § 8269; Comp Laws 1913, § 10,915.

It was provided that, "upon appeal being taken, it shall be the duty of the clerk of the district court with whom the notice of appeal is filed, without charge and without unnecessary delay, to make out a full and perfect transcript of all the papers in the case on file in his office, except papers returned by the committing magistrate on the preliminary examination when there has been one, and all of the *entries made in his minutes*, and certify the same under his hand and the seal of the court,

and transmit the same to the clerk of the supreme court." Rev Code 1895, § 8338; Comp Laws 1913, § 11,002.

These statutory provisions evidence a determined purpose on the part of the lawmakers to safeguard the rights of a defendant in a criminal action to a trial by jury, and to fair and correct instructions to the jury. Such provisions evidence an intention that all pertinent matters with respect to the instructions from the beginning of the trial up to the time the instructions are given to the jury and filed with the clerk shall be made a matter of record in the court in such manner as to safeguard the rights of the defendant and to facilitate the review of any errors that may have been made with respect to the instructions without putting the defendant to the expense of the preparation and settlement of a statement of the case.

The lawmakers not only required (in mandatory terms) that such record be made but they further made it the duty of the clerk of court, when judgment of conviction is rendered, to "annex together and file" as the "record of the action," the documents containing such pertinent information—which record, if the statutes are complied with, will present a complete record of every pertinent fact and disclose any error that may have occurred as to the instructions—from the very beginning of the trial up to the time the instructions are given to the jury and filed with the clerk. The lawmakers further required that in case of an appeal the clerk of court must, without expense to the defendant, transmit such record, duly certified, to the clerk of the supreme court.

The lawmakers, in plain and unmistakable terms, placed upon the trial courts the absolute duty in charging the jury in a criminal action to reduce the instructions to writing before they are read to the jury. And the duty so imposed remains, and the court has no right to give oral instructions, unless and until there is *"consent of both parties entered in the minutes"* that oral instructions may be given.

In construing similar provisions applicable to civil actions this court held:—"The giving of oral instruction to a jury is authorized only in an exceptional case in which the parties deliberately and voluntarily assent thereto, and *should be given only after such consent is obtained and entered on the minutes,* at such time and in such manner as will not operate to the prejudice of the rights of either party." Frozen v. Hurd, 20 ND 42, 126 NW 224.

A defendant in a criminal action is not required to invoke the right to written instructions. The statute invokes itself and protects that right. Where oral instructions are given in a criminal action the defendant is not required to prove that he did not consent that oral instructions might be given. There is no presumption that he gave such consent. The presumption is to the contrary. The presumption will be overcome by entries in the minute book showing that consent was given.

The lawmakers prescribed as conditions precedent to the authority of the court to give oral instructions that there must be consent of the parties and also that such consent must be entered in the minutes. This being so, a notation by the court stenographer in his notes, of course, constitutes no entry in the minutes as the law requires. The court stenographer's notes constitutes no part of the record of the action; and—(with the single exception of the transcript of the oral instructions)—a transcript of such notes will not become a part of the record unless and until it is embodied in a settled statement of the case. If a notation were made by the court stenographer of consent that oral instructions be given, such notation might be hidden away at any place in the stenographer's notes taken during the course of the trial and such notes might consist of hundreds of pages. Hence, this would place upon the defendant the burden of having a transcript made of all the stenographer's notes of the trial and having the same embodied in a settled statement of the case, in order to show that no consent was given and entered by the court stenographer in his minutes or notes of the trial. The stenographer's notes may be lost so that it would become impossible to have them transcribed and embodied in a statement of the case. See Peterson v. Lundquist, 106 Minn 339, 119 NW 50; and Dubs v. Northern P. R. Co. 47 ND 210, 181 NW 606. If there had been any intention on the part of the lawmakers that notations made by the court stenographer in his notes of the trial in any circumstances should constitute an entry or record of the consent to oral instructions, there can, I think, be no doubt but that they would have provided that the stenographer's notes with respect to this important matter must be transcribed and filed with the clerk and made a part of the record of the action, the same as they provided with respect to the oral instructions themselves.

In the majority opinion reference is made to the decisions of this court in State v. Mitchell, 49 ND 726, 193 NW 310, and State v. Hanson, 53 ND 879, 207 NW 1000, and it is said that in these two cases we "assumed that an entry of consent to oral instructions in the statement of the case was sufficient." It is further said that "the clear import of the decision (State v. Mitchell) is that an entry of consent to oral instructions in the statement of the case would have been sufficient. We adopted the same theory in State v. Hanson." I wholly disagree with these statements. The decisions cited do not support them, nor do they support the conclusions reached by the majority in this case. The question involved in this case was not involved, considered or decided in either of the two cases cited. Let us examine the decisions.

In State v. Mitchell, no question was involved or considered as to what is a compliance with the statute relating to consent to the giving of oral instructions. It was conceded by both parties there had been no consent to oral instructions, and, hence, of course, there was no claim that there was any entry of consent in the record. The question was as to the effect of non-compliance with the statute under the facts, which it was conceded existed, and which the record presented tended to show existed, in that case. Manifestly, no question as to the sufficiency of the entry or record of consent to the giving of oral instructions could be involved or considered in that case. At the time that case was decided, a transcript of the court stenographer's notes of the proceedings had, and the evidence adduced, at the trial could not be settled as a statement of the case in this state, even with the consent of the parties, and though approved and "vouched for by the court below." Goose River Bank v. Gilmore, 3 ND at p 190, 54 NW 1032; Comp Laws 1913, § 10,914; Wood v. Nissen, 2 ND 26, 49 NW 103; Thuet v. Strong, 7 ND 565, 75 NW 922; McTavish v. Great Northern R. Co. 8 ND 94, 76 NW 985; Smith v. Kunert, 17 ND 120, 115 NW 76. See also State v. McCallum, 23 SD 528, 122 NW 586. A transcript of the court reporter's notes was usually obtained for use in preparation and settlement of the statement of the case (Haeppler v. Pollock, 8 ND 59, 61, 76 NW 987) but only so much of the evidence was embodied on the statement as was necessary to present the ques-

tions of law upon which the exceptions were taken. Comp Laws 1913, §§ 10,914, 10,902.

In the Mitchell Case there was filed as a part of the record on appeal a settled statement of the case. The statement of the case contained no reference whatever to the instructions. There was also presented on the appeal a transcript of the evidence taken and the proceedings had on the trial, certified to by the court stenographer as prescribed by Comp Laws 1913, § 779. Such transcript contained the following statement immediately preceding the instructions:—"Counsel having finished argument to the jury, the attorney for the defendant being present at all times and making no objection or suggestion and the court overlooking the obtaining of consent to the giving of an oral charge, the following oral charge was given by the court to the jury." 49 ND 728, 193 NW 310. No question was raised as to whether the recitals in the transcript were competent proof of the facts stated. And as said, there was no dispute as to the facts. The only dispute was as to the legal consequences of the conceded facts. There was no claim that there had been any compliance at all with the statute relating to consent to oral instructions. It was admitted by both parties that there had been no consent, and that the defendant and his counsel were present when the oral charge was given, and that no objection was made thereto. There was no claim by the defendant and no attempt to point out that any special prejudice had resulted. He pointed alone to the disregard of the statute without any claim, or any attempt to show, that any special injury had resulted. In short, the claim was that the violation of the statute, the giving of oral instructions without consent, constituted reversible error per se.

I have again examined the briefs in the record in that case. The contentions of the state were stated as follows in the brief filed in that case:—"Where the defendant raises no objection to the failure of the Court to comply with some very technical rule, such as the obtaining of oral consent of parties entered in the minutes to the giving of an oral charge instead of a written one, and it appears as it does in this case from the transcript page 55, L's. 18–22, that the parties and counsel were present at the giving of the charge and raised no objection thereto, and the charge is, in fact, not prejudicial in any way to the party making the objection, the objection is not well taken." As the decision

shows, this court considered alone the effect of the disregard of the statute in light of the there conceded facts that the oral instructions were given in the presence of defendant and his counsel and that no objection was made thereto. The material part of the decision is contained in the following statement:—"This statute is clearly mandatory in its requirements that the instructions first be reduced to writing. The defendant on trial has a right to assume that the statute will be complied with and his silence can not be construed as consent. · In the absence of inquiry it could not be known whether or not he was willing to assent to an oral charge being given. The court makes it clear in the transcript that such consent was not obtained. It follows that there was a mistrial and that the judgment must be reversed." 49 ND 728, 729, 193 NW 310. Manifestly, there was no holding,—there was not even an intimation,—in the decision in the Mitchell case as to what would constitute an entry of consent to oral instructions, or the effect of want of such entry. In the very nature of things there could have been none.

In State v. Hanson, 53 ND 879, 207 NW 1000, supra, the instructions were reduced to writing before they were given to the jury. After the jury had retired for deliberation they were brought back into court at their own request. Upon the jury being brought in there followed a colloquy between the foreman and the trial judge wherein the foreman informed the judge as to certain difficulties the jurors were having with a certain portion of the written instructions. After referring to the jurors' request for additional instructions the trial judge said: "I don't suppose there is any objection to it not being in writing? The court can put it in writing."

The record shows affirmatively that both defendant and his counsel were present at the time; and they made no objection to the court's suggestion that the additional instructions be given orally. The trial court thereupon proceeded to give certain additional oral instructions to the jury. All that was said by the trial court was taken down by the court reporter and transcribed as part of the record. No exceptions were taken at the time the instructions were given to the manner in which they were given. Such exception was presented for the first time in the specifications of error on appeal, and even on appeal, no exception was taken to the matter of the additional

instructions. In other words, it was not contended that the additional oral instructions did not state the law correctly. The sole complaint was that they were given orally. 53 ND 886, 887, 207 NW 1000, 1002, 1003.

It is apparent that there is some difference between a situation where the main charge is given in writing and the jury after retiring requests further information or instruction and the court in response to such request makes certain oral comment to clarify the matters concerning which the jury inquires, and a situation where the main charge itself is given orally. This difference is recognized by the authorities and is in a measure recognized by our statutes.

Comp Laws 1913, § 10,821, provides for the order of trial of a criminal action. The section sets forth the several steps to be taken on the trial. The fifth subdivision of the section relates to the argument of counsel, and the sixth subdivision states:—"The judge must then charge the jury." The section immediately following (Comp Laws 1913, § 10,822) provides:—"In charging the jury the court shall only instruct as to the law of the case and all instructions must first be reduced to writing, unless by consent of both parties entered in the minutes, the instructions are given orally and taken down by the stenographer of the court in shorthand."

Apparently the lawmakers in the reference in Section 10,822, supra, to "in charging the jury" had in mind primarily the charge mentioned in the preceding section, which they provided that the judge must give to the jury after all the evidence had been introduced and the arguments of counsel made. Millard v. Lyons, 25 Wis 516, 517. There was no specific reference in either of the two sections last cited to information or instruction which the jury may request after they have retired for their deliberations. Such eventuality, however, was not overlooked, as the lawmakers, after providing for such matters, as what papers the jury may take with them upon retirement, the custody and conduct of the jury, food and lodging for the jury, etc., further provided:—"After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought

into court the information required must be given in the presence of, or after notice to the state's attorney and the defendant or his counsel, or after they have been called." Comp Laws 1913, § 10,871. Our statute does not provide that the request or communications from the jury be in writing or that the answers of the court must be in writing (as the statute in at least one state seems to do). When the jury is brought back at their own request for further information, it is not possible to know in advance what information is desired, unless the request has been made in writing. Even then, the individual members of the jury may desire further explanation or clarification after they hear the explanation given. The information which the jury desires may refer to the evidence, or to the instructions, or there may be some other matter concerning which they desire to communicate with the court. The statute makes it clear that whatever takes place upon the return of the jury for further information or instruction must take place in open court; counsel for both the state and the defendant and his attorney must be called so that they may be present and hear and see what transpires (Comp Laws 1913, § 10,871) and thus take such action as they may deem necessary, which is authorized by the law. The proceedings had upon the return of the jury for further information or instruction is part of the trial, which it is the duty of the court stenographer to take down in shorthand (Comp Laws 1913, § 775); and the transcript of the shorthand notes may be embodied in the statement of the case. Laws 1925, c 126; Comp Laws 1913, § 7655.

In the Hanson Case both the defendant and his counsel were present. They heard the colloquy between the trial judge and the foreman of the jury. They knew as much about the subjects concerning which the jury desired further information as did the court. The judge after hearing the request of the jury propounded a specific question whether the additional instructions sought should be reduced to writing. There was a direct invitation by the judge to both parties to speak. There was no response and he proceeded to give the instructions orally. The defendant and his counsel heard all that was said. They made no objection and no request or suggestion that other instructions be given. There was no claim at any time, even on appeal, that the additional instructions were in any manner incorrect or unfavorable to

the defendant. On appeal the defendant contended that the case fell within the rule in State v. Mitchell; that it was reversible error for the court to give the additional instructions orally without the consent of both parties entered in the minutes. Counsel for the state contended that the case did not fall within the rule in State v. Mitchell and that the defendant had waived any right to have the additional instructions given in writing. We were of the mind that the facts in the case distinguished it from the Mitchell Case. The material part of the decision in the Hanson Case on the question under consideration is contained in the following statement set forth immediately after the recital of the facts:—"In the circumstances, we think there was a waiver by the defendant of the right to written instructions, and that error cannot be predicated thereon. (Citation by authorities) The rule announced by this court in State v. Mitchell, 49 ND 726, 193 NW 310, is not applicable to the facts here." 53 ND 887, 207 NW 1003.

"It is a maxim not to be disregarded," said Chief Justice Marshall, Cohen v. Virginia, 6 Wheat. (US) 264, 5 L ed 257, "that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. . . . The reason of this maxim is obvious." "It is a general rule," said Chief Justice Marshall, Ogden v. Saunders, 12 Wheat. (US) 333, 6 L ed 647, "that the positive authority of a decision is co-extensive only with the fact on which it is made."

The Hanson Case was decided on the facts shown and conceded to exist in that case. The decision there did not refer to, discuss, or determine any question as to what constitutes an entry in the minutes of the consent of the parties to oral instructions, or the effect of no such entry being made. In that case it was conceded that the court's charge to the jury delivered at the close of the arguments was reduced to writing before it was read and given to the jury; that after the case was submitted and the jury had retired for deliberation, they returned into court at their own request and asked for certain further information or instruction; that there was no express consent to the giving of oral instructions, and, of course, there could have been no entry of a consent that never had been given. The question presented and decided in the Hanson Case was whether under the facts in that case the defendant

had waived any right he might have had to have the additional instructions reduced to writing. The very language employed in the opinion shows that it was not a case involving a determination of what constituted compliance with the statute. We said, "we think there was a waiver by the defendant of the right to written instructions, and that error cannot be predicated thereon." Of course, a question of waiver of a right granted by a statute does not and cannot arise where there has been compliance with the provisions of the law. The question of waiver can arise only where there has been, or is claimed to have been, non-compliance. The decision in the Hanson Case determined, and is authority for, the proposition only that where a case has been submitted to the jury under written instructions; and the jury are returned into court at their own request for further information or instruction, and counsel for the state and the defendant and his attorney are called, and are present and hear and see all that is said and done, and the court, after being informed as to the matters upon which the jury desires further information or instruction, states:—"I don't suppose there is any objection to it not being in writing? The court can put it in writing," and no response being made by counsel for either of the parties or by the defendant, the court thereupon gives oral instructions upon the subjects requested by the jury to which instruction there is no objection; and where there is no request for further or additional instruction, and no suggestion that there is any objection to the procedure that has been adopted, that such conduct in the circumstances operates as a waiver by the defendant of any rights he may have to have the additional instructions reduced to writing before they are given to the jury. In the very nature of things the decision in the Hanson Case has no bearing whatever upon the question as to what constitutes an entry "in the minutes" of a consent to oral instructions or the effect of the failure to enter such consent in the minutes kept by the clerk.

The majority say that, "conceding for the purposes of this case that it was error not to enter defendant's consent to oral instructions in the clerk's minutes of the trial" that in the circumstances shown here, "the error, if any, was not prejudicial to any of the defendant's substantial rights and is therefore not a ground for reversal."

I disagree. The same contention was made by the state, and rejected by this court, in State v. Mitchell, 49 ND 726, 193 NW 310, supra.

The contention of the state in that case was that the defendant had not been prejudiced by the oral instructions. In the decision of that case this court did not consider at all whether the defendant had actually been prejudiced. The court considered alone the terms of the statute, found them to be mandatory, and so concluded that the disregard of the statute constituted reversible error. In the eyes of the law a certain act may be lawful or unlawful dependent solely upon whether it is forbidden by the law. The act charged as a crime in the instant case constitutes a crime only because the Legislature has made it so. Where the Legislature by a valid law has provided that a certain act, otherwise lawful, shall constitute a crime, it becomes the duty of the courts to give effect to the will of the lawmakers as expressed in the law. And, where the Legislature has commanded that something be done, or not done, by the court upon the trial of a criminal action, a disregard of the legislative command is a violation of the law, is generally held to be error *per se,* and cannot be said to be harmless error. State v. Porter, 35 La Ann 535; People v. Sanford, 43 Cal 29; State v. Cooper, 45 Mo 64; State v. Bennington, 44 Kan 583, 25 P 91; State v. Harding, 81 Iowa 599, 47 NW 877; Train v. Sisti, 146 Misc 362, 262 NYS 167, 175, 176; State v. Fisher, 23 Mont 540, 59 P 919; 2 Thompson, Trials, 2d ed § 2375; State v. Mitchell, 49 ND 726, 193 NW 310, supra; Clark v. State, 138 Tex Crim Rep 107, 134 SW2d 676; Tucker v. State, 119 Tex Crim Rep 490, 43 SW2d 103; Penberthy v. Lee, 51 Wis 261, 8 NW 116.

The Legislature imposed upon the trial courts of this state the positive and absolute duty to give written instructions in all criminal cases, "unless by consent of both parties entered in the minutes" it is agreed that oral instructions may be given. The Legislature did not say that oral instructions may be given if there is consent by both parties; it said oral instructions may be given in a criminal case only if there is "consent of both parties entered in the minutes." The Legislature must be presumed to have meant what it said, and all that it said, and nothing else. Dickinson v. Thress, 69 ND 748, 755, 290 NW 653, 657; State v. Porter, 35 La Ann 535, supra.

The majority opinion says that the statement of the case is a solemn judicial record which imports absolute verity and that such statement shows that the defendant waived written instructions. It is true the

statement of the case is a solemn judicial record which imports absolute verity. This, however, does not make it the record where consent to oral instructions must be entered. The statute did not provide that the consent of the parties to oral instructions should eventually be entered in a statement of case, settled after the action was tried and determined. It provided specifically and emphatically that the trial judge must instruct in writing "unless by consent . . . entered in the minutes" oral instruction is consented to. The consent must be entered as prescribed before oral instructions are authorized. The Legislature prescribed the conditions and the only conditions under which oral instructions may be given in a criminal action. The courts might conceivably devise a better and more effective record of the consent than the Legislature prescribed, but that is not a matter for the courts; that is a matter for the lawmakers. The conditions which they prescribed are exclusive.

In my opinion, however, the statement of case in any event fails to show that there was any consent by or on the part of the defendant that oral instructions might be given. By chapter 126, Laws 1925 the practice which formerly prevailed in this state of embodying in the statement of the case only so much of the evidence and the proceedings had upon the trial as was necessary to present the questions of law upon which the exceptions were taken was abolished, and instead it was provided that a party desiring to have a statement of case settled and made a part of the record must procure a transcript of the court stenographer's notes of the trial, serve a copy thereof upon the adverse party, and present the same to the trial judge for certification as a "correct transcript of the evidence and of all proceedings had and made a matter of record by the official stenographer." Comp Laws 1913, § 7655. The statute made it the duty of the court stenographer to "take in shorthand all testimony given orally by witnesses and all objections and exceptions taken, also the instructions given orally by the court and all other proceedings at the hearing or trial not reduced to writing." Comp Laws 1913, § 775.

When the transcript was presented to the trial judge for certification and settlement as a record in the case, if the correctness was questioned, the judge was required to "make such corrections, if any, as shall be

necessary to make the transcript correct." Comp Laws 1913, § 7655; Laws 1925, c 126. Under the practice prescribed, the statement of case would contain a complete record of everything that occurred upon the trial that had not been reduced to writing. In other words, the statement of case, together with the written documents, would contain a complete and literal record of everything that was said or that transpired upon the trial. Under the practice prescribed, no summarization or narration of the testimony is permitted. The record would show precisely what was said and who said it. Thus, if the trial judge asked whether the parties consented to oral instructions the transcript would show that he asked the question. It would show the words used and at what point in the proceedings the question was asked; and it would also show the answers that were given and by whom. Obviously, a statement by the court stenographer in the transcript, even though the same is later embodied in the statement of case, that the defendant "waived written instructions," or "written instructions having been expressly waived by the defendant" is not a report of what occurred at the trial or what was said, nor does it purport to be. It is merely the conclusion of the court stenographer as to the effect or ultimate result of something that was said or done, and the embodiment of the same in a statement of case does not constitute proof of anything that was said and done, but is merely proof of the expression of the conclusion which it purports to be.

In State v. Mitchell, 49 ND 726, 193 NW 310, the court stenographer and the trial judge probably were of the mind that the defendant and his counsel in that case had waived written instructions, by their conduct when the oral instructions were given. Similarly, in State v. Hanson, 53 ND 879, 207 NW 1000, the court stenographer and the trial judge probably were of the mind that the conduct of the defendant and his counsel constituted a consent that additional oral instructions might be given. If in those two cases, the court stenographers and the trial judges had merely stated their ultimate conclusions, they probably would have been entirely truthful if they had stated such conclusions to be that the parties waived written instructions or that they consented to the giving of oral instructions. But in those two cases there was no attempt to state conclusions. There was a frank, fair and complete report of exactly what was said and what occurred.

The rule that the statement of case imports absolute verity is not a one-way rule. It imports verity not only as to what it shows was said and done, but it imports verity as well as to what it does not show to have been said and done. If the record is silent and does not show that anything was said during the course of the trial with respect to a certain matter, which it would be the duty of the stenographer to take down in shorthand and transcribe, then the record equally imports verity that there was nothing said. For instance, suppose that in this case, or in any case, error were predicated upon the proposition that the trial court at an adjournment of the court failed to admonish the jury "that it is their duty not to converse among themselves or with anyone else upon any subject connected with the trial, or to form or express any opinion thereon, until the case is finally submitted to them," as required by § 10,858, Comp Laws 1913, and suppose further that the settled statement of case shows that adjournment of the court were had, and the record is wholly silent and does not show that any such admonition was given at the adjournment, then the statement of the case would also import verity that no such admonition was given.

Let us examine the record as contained in the statement of the case here, and see what it shows with respect to consent by the defendant to oral instructions.

The State's Attorney, who prosecuted the action was named Register, and the attorney for the defendant was named Murray. The transcript of the Court Stenographer's notes, which was settled as the statement of the case, contains two statements on two different days referring to the "waiver" of "written instructions."

On February 16, 1944, the defendant, Myers, was re-called by the state's attorney for "re-cross examination." Immediately upon the completion of such examination, the attorney for the defendant read a written stipulation between himself and the state's attorney as to what testimony a certain witness would give if personally present. The following is a literal copy of the stenographer's transcript, settled as the statement of the case, of everything stated and recorded therein after the conclusion of the reading of the said stipulation by defendant's attorney on February 16, 1944 up to and including the first statement shown or item recorded on the following day:—

"Mr. Register:—We will stipulate further, he personally did not sell or deliver to the said C. J. Myers, during that time, any intoxicating liquor in a bottle or other receptacle than one glass.

Mr. Murray:—We rest.

The Court:—Let the record show defendant rests.

"The Court:—We will take a recess until 9:15 tomorrow morning.

(Written instructions waived by Mr. Murray. Asked him if he wanted me to work again tonight, and he said that was not necessary. Also, waived by Mr. Register.)

February 17th, 1944, 9:15 A.M.

The Court:—Court will come to order. Poll the jury, Mr. Clerk."

The transcript and statement of the case shows that thereafter the state called three witnesses who testified in rebuttal of certain testimony that had been introduced by the defendant. Immediately following such testimony, the transcript and statement contains the following:—

"Mr. Murray: That is all.

Mr. Register: The State rests.

The Court: Let the record show the State rests.

Mr. Murray: The defendant rests.

The Court: Let the record show both parties rest.

(Mr. Register argues to the jury on behalf of the State.) (Recess is taken at conclusion of Mr. Register's argument, the jury having been admonished.)

(Pursuant to recess Court re-convenes.)

The Court: Court will come to order. Let the record show all parties are present including the defendant.

(Mr. Murray argues to the jury on behalf of the defendant.)

(Mr. Register argues to the jury in closing on behalf of the State.)

At the close of the arguments to the jury by the counsel for both parties, the Court delivered the following Oral Instructions of the Court:

At the close of the testimony and arguments, counsel for respective parties having expressly waived written instructions, apart from the presence of the jury, the following Oral instructions were delivered by the Court to the Jury:" (Here follow instructions).

The foregoing is a literal copy of the statements that appear in the transcript of the court stenographer's notes which the trial court settled

in the statement of the case. These are the only statements in the transcript making any reference to "waiver" of written instructions. It will be noted that the notations were made on two different days of the trial. The first was made on the day preceding the one on which the case was submitted to the jury, and the second was made on the day the case was submitted to the jury. Now what do these statements show?

It will be noted that the first statement does not purport to have been made or taken down as a part of the proceedings while the court was in session. It is shown as a notation or report of something that took place after the court had recessed, or at least something that took place some time before the court re-convened on February 17, 1944. The statement is enclosed in parenthetical marks, indicating that it was something aside,—a recital of something that had transpired. It purports to be a memorandum of a conversation had between the court stenographer and the attorney for the defendant, which conversation is stated to have been as follows:—"Asked him (Mr. Murray) if he wanted me to work again tonight and he said that is not necessary." This is the entire conversation that is stated to have taken place. The alleged conversation makes no mention of consent to oral instructions. To have any such meaning it must be supplemented by something outside of what is related as having been said in the conversation. There is nothing to show where the conversation took place or what time it occurred. The statement as to the conversation is preceded by the sentence, "Written instructions waived by Mr. Murray." Apparently, this was the court stenographer's construction as to the result of the conversation. The statement as to the conversation was apparently made to show the basis for the conclusion stated,—that defendant's counsel "waived written instructions." Otherwise there would have been no point at all in reciting the conversation. The only purpose a statement of the conversation could have was to serve as an explanation of, or basis for, the conclusion stated in the sentence immediately preceding,—"Written instructions waived by Mr. Murray." It is likely that the stenographer did not believe that what was said in the conversation between defendant's counsel and herself during the recess operated as a waiver of written instructions; but rather that she con-

sidered it as an assurance by defendant's counsel that if and when inquiry or suggestion with respect thereto were made by the trial judge, defendant would waive written instructions. Hence, the parenthetical notation was made, showing that it was something that took place out of court, and not a part of the proceedings had in court.

It is apparent that the second statement with respect to "waiver" of written instructions,—the statement immediately preceding the giving of oral instructions—is merely a reference to a past event. If the transcript correctly reports the proceedings had at the time, it cannot be otherwise. It will be noted that there is a repetition of reference to the delivery of oral instructions.

The statement reads—

"At the close of the arguments to the Jury by the counsel for both parties, the court delivered the following Oral Instructions of the Court:

At the close of the testimony and arguments, counsel for respective parties having expressly waived written instructions, apart from the presence of the jury, the following oral instructions were delivered by the Court to the Jury:"

The first part of the statement says nothing about the waiver of written instructions. It says:—"At the close of the arguments to the jury by the counsel for both parties the court delivered the following oral instructions to the court:" This is followed by this statement:— "At the close of the testimony and arguments, counsel for respective parties having expressly waived written instructions, apart from the presence of the jury, the following oral instructions were delivered by the court to the jury:" Are these statements a transcript of a notation that was made of something that was said, made at the time that that something was said? If so, did anything transpire between the incidents which these two statements purport to report which accounts for the differences between them? Was the jury excused after the incident which the first statement purports to report, and did counsel for the respective parties thereupon make statements that they "waived written instructions?" The settled statement of the case which imports absolute verity testifies to the contrary. Obviously, these statements are not notations of anything that was then said but are merely refer-

ences by the court stenographer, preliminary to the instructions, to something claimed to have been said or done at some prior time. Not only the language but the very setting of these statements indicate that they were not a report of anything that was said at the time by the defendant, or by counsel for the respective parties with respect to consent to oral instructions, or the "waiving" of written instructions; but that they are merely recitals of a prior event,—a reference to something that had been done before. If the transcript correctly reported what transpired upon the trial, the statements could not possibly refer to anything that was said or that transpired at that particular time, and the very language employed shows that they did not. They could not refer to any statement that was made by the defendant or his attorney. "At the close of the testimony and arguments," "apart from the presence of the jury" or at all; for, according to the transcript, the trial continued without interruption, there was no recess, the jury was not excused, and there were no statements made by the defendant, by his counsel, or by the court after the close of the arguments and before the instructions to the jury were given. The oral instructions were given to the jury immediately upon the close of the arguments, and nothing was said or transpired in the course of the trial interim the arguments and the delivery of the instructions.

If the transcript is true there could have been no "express waiver" of "written instructions," "apart from the presence of the jury" interim the close of the arguments and the delivery of the oral instructions to the jury. The statement of the case imports absolute verity. Before the statement of the case had been settled, the defendant served notice that he would move for a new trial upon the minutes of the court. One of the principal grounds stated in such notice of motion and in the motion was that the court had erred in not giving instructions in writing, and that oral instructions had been given without the consent of the defendant. When the statement of the case was presented for settlement, it was also contended that there had been no consent to oral instructions and that the statements in the transcript reciting the conclusions of the court stenographer to the effect that defendant had "waived" written instructions were unwarranted and should be eliminated. So it is not a case where an omission in the transcript with respect to what was said, or not said, regarding consent to oral instruc-

tions could have been overlooked. Under the statute it was the duty of the trial judge to "make such corrections as shall be necessary to make the transcript correct." Comp Laws 1913, § 7655. If, to the knowledge of the trial judge, any statements were made a any time during the course of the trial by the defendant or his counsel to the court, either in response to questions from the court or otherwise, that were not shown by the transcript, then it was his duty to cause the transcript to be corrected accordingly, to the end that the statement of the case as settled would show precisely what transpired upon the trial, and if anything was said, exactly what was said, and who said it, and at what time during the trial it was said.

The statement of the case imports absolute verity. It is presumed that such statement shows all that was said and all that transpired, which the court stenographer was required to take down in shorthand; and it is presumed that what is shown in the transcript is all that was said and that transpired, which the court stenographer should have taken down. If at any time from the opening of the court on the morning of February 17, 1944 up to the time the oral instructions were given to the jury, anything was said by the defendant or his attorney regarding consent being given to oral instructions, then the transcript and statement are untrue because they do not show that anything of the sort was said; and any attempt to show that such statements were made by proof outside of the statement of the case would be inadmissible as an attempt to impeach the record. 4 CJ 514. The statements in question did not say that the defendant or his counsel consented that oral instructions may be given. In the conclusions stated by the court stenographer, it is said that they "waived written instructions." How was the waiver made? Was it made in words? If so, whose words and what were the words? Was the waiver in response to an inquiry or suggestion from the court? Did the defendant or his counsel volunteer that the defendant consented that oral instructions might be given? What, if anything, was said and what transpired with respect to this matter? The record is eloquently silent.

What is the record on this appeal with respect to consent by the defendant to oral instructions? The transcript of the entries of the clerk's minutes of the trial, attached to and made a part of the judgment record as the statute requires and certified to this court as a part of the

record on appeal, shows that the clerk kept very full minutes of the trial. Every act, ruling, and order which the clerk was required to enter in his minutes was entered. The minutes, however, do not show any consent to oral instructions. It must be presumed that if there had been any such consent that the clerk would have made the proper entry. The only other reference in the record with respect to the oral instructions are the statements in the court stenographer's transcript of the notes of the trial heretofore referred to, and which transcript was settled as a statement of the case. These statements do not either of them purport to report anything that was said by either the defendant or his counsel in court consenting that oral instructions might be given. As has been pointed out, the first statement inserted in parentheses refers to an incident which the statement shows was not made in court, and the last statement is not a report of anything that was said at the time, but is a reference to something supposed to have happened in the past. Recitals of conversations had out of court, and statements of the conclusions of the court stenographer as to the effect of something assumed or said to have occurred in the past do not become proof of the existence of the facts upon which the conclusions purport to be based, even though the recitals and conclusions are embodied in the statement of the case. They remain what they were, and what they purport to be, and nothing more.

Under the law the defendant had an absolute right to have the instructions reduced to writing before they were given to the jury. Such right continued unless and until he voluntarily, intentionally, and unequivocally, waived the right (67 CJ pp. 289, 306) by expressely consenting that oral instructions might be given. 2 Thompson, Trials, 2d ed § 2375. It will not be presumed that the defendant waived any of his legal rights. A strict compliance with the provisions of the statute, prescribing the manner in which the waiver may be accomplshed, must be shown. "The defendant on trial has a right to assume that the statute will be complied with and his silence cannot be construed as consent." Thompson, Trials, 2d ed § 2375; State v. Mitchell, 49 ND 726, 193 NW 310.

The failure of the record on appeal to show in the manner which the statute prescribes, or at all, that the defendant consented to oral instructions may not be remedied by presumptions or intendments said to

arise from anything the trial judge may have done indicating that he was of the belief that such consent had been given.   State v. Walton, 50 Or 142, 154, 91 P 490, 494, 13 LRA (NS) 811, 820.   See also State v. Walton, 5 Or 574, 91 P 495.